Gary L. Kaplan
Peter B. Siroka
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, New York  10004
Telephone: (212) 859-8000
Facsimile:  (212) 859-4000

*Attorneys for Lic. Fernando del Castillo Elorza as*
*Foreign Representative of Controladora*
*Comercial Mexicana, S.A.B. de C.V.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
| **CONTROLADORA COMERCIAL** | : | Case No. 10-13750 (SMB) |
| **MEXICANA, S.A.B. de C.V.** | : |  |
|  | : |  |
| Debtor in a Foreign Proceeding. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DECLARATION OF LIC. FERNANDO DEL CASTILLO ELORZA**
**AS FOREIGN REPRESENTATIVE OF CONTROLADORA**
**COMERCIAL MEXICANA PURSUANT TO 28 U.S.C. § 1746**

     I, Lic. Fernando del Castillo Elorza, declare under penalty of perjury under the laws of

the United States of America that the following is true and correct:

     1.     I hereby submit this declaration (the "Declaration") in support of the Verified

Petition for Recognition of a Foreign Main Proceeding and Request for Related Relief (the

"Verified Petition") and the Motion of the Debtors for a Temporary Restraining Order and

Preliminary Injunction, which I have filed contemporaneously herewith, and which seeks entry

of an order (i) recognizing the voluntary insolvency proceeding that was initiated by

Controladora Comercial Mexicana S.A.B. de C.V. ("CCM") and is currently pending in the

District for Civil Matters in Mexico City, Federal District, Mexico (the "Concurso Proceeding")

as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) recognizing Fernando del Castillo Elorza as the foreign representative of CCM in connection with the Concurso Proceeding and (iii) granting related relief pursuant to section 1520 of the Bankruptcy Code. Except as set forth below, I have personal knowledge of the matters set forth in this Declaration.

2. Although my native language is Spanish, I am fluent in English and have elected to execute and submit this Declaration in English.

3. I am counsel to CCM in Mexico.

4. In order to carry out my duties as foreign representative of CCM, I am the recipient of a Power of Attorney from CCM which authorizes me to, among other things, initiate legal proceedings on behalf of CCM. A true and correct copy of the Power of Attorney granted to me by CCM and an English translation thereof are attached hereto as **"Exhibit A"** and **"Exhibit B"**, respectively.

5. Contemporaneously herewith, I have caused this chapter 15 case to be commenced through the filing of the Verified Petition.

6. Originally founded in 1944, CCM is the holding company for a series of Mexican businesses that comprise the third largest operator of food retail stores in Mexico. As of December 31, 2009, CCM's businesses operated 231 retail stores and 73 restaurants under eight different formats—six different retail store formats, one warehouse club and one chain of family restaurants—in twenty-four Mexican states. CCM's retail brands include Comercial Mexicana, Bodega Comercial Mexicana, Mega, City Market, Sumesa, Fresko and Al Precio. CCM also owns the Restaurantes California chain of family-style restaurants and participates in a joint-venture with Costco Wholesale Corporation to operate warehouse clubs under the Costco brand.

For the fourth quarter of 2009, CCM reported net sales of approximately MXP$ 14.441 billion (approximately US$1.139 billion) and employed approximately 33,000 people.[1]

7.      CCM's principal indebtedness consists of (i) unsecured notes, (ii) Mexican commercial paper (the "Cebures") and (iii) unsecured bank loans (the "Bank Debt").  There are three series of unsecured notes: (a) US$200 million in principal of 6.625% Senior Notes due 2015 (the "2015 Notes"); (b) MXP$ 3 billion in principal of 8.7% Senior Notes due 2027 (the "2027 Notes"), and (c) MXP$ 111,341,051 in principal of UDI-denominated 8% Senior Notes due 2010[2] (the "2010 Notes" together with the 2015 Notes and 2027 Notes, the "Notes").  The Notes are beneficially owned by many different holders (the "Noteholders"); and as such, not all Noteholders are known to CCM.  The Bank of New York Mellon acts as indenture trustee for the 2015 and 2027 Notes, while HSBC acts indenture trustee for the 2010 Notes.  The Cebures consist of MXP$ 1.5 billion of commercial paper, 97.3% of which is held by a subsidiary of CCM, Tiendas Comercial Mexicana ("Tiendas"), which acquired the Cebures in an exchange offer on May 4, 2010.  The remaining Cebures are held by a number of different owners who did not participate in the exchange offer.  The Bank Debt consists of MXP and USD denominated unsecured loans to seven different Mexican banks (the "Commercial Banks") totaling MXP$ 2.545 billion and US$99.4 million.[3]  CCM has also entered into a Settlement and Debt Acknowledgement Agreement (as defined below) to settle CCM's obligations under certain foreign exchange and interest rate Derivative Transactions (as defined below), as more fully described below.

---

[1]      As a holding company, CCM has no employees of its own.  All employees are employees of CCM's subsidiaries and affiliates.

[2]      The MXP value of the 2010 Notes is based on the UDI conversion rate as of April 28, 2010.  The 2010 Notes are 24,981,400 UDI in principal.

[3]      A list of the Commercial Banks and their respective holdings of the Bank Debt is included on Schedule 3 to the Term Sheet (defined below).

8.      CCM began engaging in hedging activities in the 1990s to control currency risk on U.S. imports and debt service.  From time to time, CCM also entered into interest rate swaps to convert long term fixed rate payments into cheaper floating rate payments, to save on debt service costs.

9.      In 2005, CCM entered into a substantial program of forward dollar purchases to hedge against the potential decline in value of the Mexican peso (the "Peso Hedges").  When the Mexican peso did not decline, CCM began to lose money on the Peso Hedges.  Subsequently, CCM entered into various derivative transactions to offset the losses from the Peso Hedges. Many of these transactions involved CCM taking positions in the U.S. dollar and other foreign currencies.

10.     During 2007 and 2008, CCM entered into derivative transactions (the "Derivative Transactions") with JP Morgan Chase Bank, N.A., Banco Nacional de Mexico, SA Institution de Banca Multiple, Grupo Financiero Banamex, Banco Santander, S.A, Grupo Financiero Santander, Barclays Bank PLC, J. Aron & Company,[4] Merrill Lynch Capital Services Inc. and Merrill Lynch Capital Markets AG (together, the "Derivative Counterparties").

11.     In late September and early October 2008, following turmoil in the financial markets and the Lehman Brothers bankruptcy filing, there was a significant devaluation of the Mexican peso and the Euro against the U.S. dollar.  As a result of this devaluation, CCM found itself facing substantial claims for margin calls arising on account of the Derivative Transactions. In early October, the Derivative Counterparties exercised contractual provisions to terminate the transactions, and asserted claims exceeding US $2 billion against CCM for the amounts they claim are due upon such early termination.

---

[4]     On October 20, 2008, J. Aron & Company was assigned the claims in the Derivative Transactions.  For ease of reference, both J. Aron & Company and J. Aron & Company's assignor are referred to herein as "J. Aron & Company."

12.     Because of the mounting loss claims and additional margin calls associated with the Derivative Transactions, CCM faced a severe liquidity crisis and became unable to pay its suppliers and providers.  All payments to suppliers and providers temporarily ceased on October 7, 2008, the same day that CCM made its final margin call payment to the Derivative Counterparties.  On October 9, 2008, CCM filed a voluntary petition (the "First Concurso Petition") to commence a case under Mexico's *Ley de Concursos Mercantiles* (the "Concurso Law") with the District Court for Civil Matters for the Federal District, Mexico (the "Federal District Court"), which was subsequently rejected on October 27, 2008.  On October 29, 2008, CCM filed a second petition for relief under the Concurso Law with the Federal District Court (the "Second Concurso Petition").  The Second Concurso Petition was rejected on November 3, 2008.  Both the First Concurso Petition and the Second Concurso Petition were denied on technical grounds under Mexican law.

13.     On November 6, 2008, certain of the Derivative Counterparties (the "DCP Plaintiffs")[5] filed complaints against CCM in the New York State Supreme Court for New York County (the "New York Court"), which are currently pending before Justice Eileen Bransten (the "Derivatives Litigation").[6]  Generally, the complaints allege that CCM breached the underlying agreements governing the Derivative Transactions by failing to post required collateral or make payments allegedly owed to the DCP Plaintiffs.  The DCP Plaintiffs are seeking combined damages of over USD $1.5 billion.  Each of the DCP Plaintiffs moved for summary judgment in the Derivatives Litigation (such motions, the "Summary Judgment Motions").  On March 16,

---

[5]     The DCP Plaintiffs are JP Morgan Chase Bank, N.A., Barclays Bank PLC, J. Aron & Company, Merrill Lynch Capital Services Inc. and Merrill Lynch Capital Markets AG.

[6]     The case names and their index numbers are: <u>J.P. Morgan Chase Bank, N.A. v. CCM</u>, Index Number 603215/2008; <u>J. Aron & Company v. CCM</u>, Index No. 603225/2008; <u>Merrill Lynch Capital Markets AG and Merrill Lynch Capital Services Inc. v. CCM</u>, Index No. 603214/2008; and <u>Barclays Bank PLC v. CCM</u>, Index No. 603233/2008.

2010, the New York Court issued its decisions granting the Summary Judgment Motions as to liability only, and referring the quantification of losses to a special referee to hear and report. CCM has appealed those decisions. At a conference held on May 12, 2010, the New York Court invited CCM to file motions setting forth its grounds for seeking pretrial discovery on loss calculations. The parties have stipulated, subject to Court approval, that such motions will be filed on July 21, 2010, and will be argued, after briefing, on October 28, 2010. Prior to the filing of the Concurso Proceeding with the Federal District Court, CCM entered into a stipulation with each of the DCP Plaintiffs, which was so ordered by the New York Court (each a "Stipulation") staying the Derivatives Litigation pending completion of the global settlement contained in the Term Sheet and the Concurso Plan.[7] Each Stipulation provides that upon (i) the occurrence of a termination event under a Standstill Agreement (as defined below) and (ii) the expiration or earlier termination of the Subsidiary Agreement, the Stipulation will terminate, such that a DCP Plaintiff may elect to continue the Derivatives Litigation and/or exercise any of its rights and remedies against CCM or its assets.

14. Following the rejection of the Second Concurso Petition and shortly after the commencement of litigation by the DCP Plaintiffs, CCM commenced the process of negotiating a global settlement of its outstanding indebtedness with its various creditor constituencies. After more than a year of negotiations, in late May 2010, CCM agreed with the Derivative Counterparties, the Commercial Banks and certain Noteholders (the "Ad Hoc Group of Noteholders") on the terms of a restructuring to be consummated through a prenegotiated plan of reorganization under the Concurso Law that is supported by over 85% of the eligible debt and claims of CCM (as further described in the Term Sheet (defined below), the "Eligible Debt").

---

[7]      A copy of a Stipulation is attached as **Exhibit 4** to the Verified Petition.

15.     On July 14, 2010, CCM commenced the Concurso Proceeding by filing a voluntary petition for relief under the Concurso Law (the "Concurso Petition") in the Federal District Court, along with a prenegotiated concurso plan of reorganization (the "Concurso Plan"). As of the date hereof, the Concurso Plan is supported by a sufficient majority so as to bind non-consenting parties under Mexican Law. Two days after the filing of the Concurso Plan, CCM filed the Verified Petition and Verified Complaint for a temporary restraining order and preliminary injunction.

16.     The Concurso Plan, as more fully described in the term sheet setting forth the terms of the Concurso Plan, which is attached to the Verified Petition as **"Exhibit 1"** (the "Term Sheet") (defined below), provides that in exchange for extinguishment of their existing claims, (i) the Derivative Counterparties will receive their pro rata share of a financial package consisting of (a) a new term loan facility (the "New Term Loan"), (b) a new asset-linked debt facility (the "Asset-Linked Facility"), and (c) new secured bonds (the "New Bonds"); (ii) the Commercial Banks will receive their pro rata share of a financial package consisting of portions of the New Term Loan and Asset-Linked Facility; and (iii) the Noteholders will receive a portion of the New Bonds.

17.     The New Term Loan consists of two tranches: an MXP$ 5.25477 billion amortizing tranche and an MXP$ 3.40773 billion bullet tranche. The New Term Loan is secured by, among other things (a) first-priority liens on (i) all of CCM's real property assets with a value in excess of MXP$ 50 million (with certain specific exceptions), (ii) all of the capital stock owned by CCM, directly or indirectly, in each of the Guarantors (as defined in the Term Sheet) (other than capital stock currently serving as collateral for the Scheduled Working Capital Debt Facilities (to be defined in the definitive documentation) and Credit Support Facilities (to be

defined in the definitive documentation)), (iii) all collateral previously pledged for the Scheduled Working Capital Debt Facilities and Credit Support Facilities that ceases to secure such facilities (each as defined in the Term Sheet), and (iv) a Creditor Proceeds Account (as defined in the Term Sheet); and (b) the Comerci Proceeds Account (as defined in the Term Sheet) and any funds or securities therein, to the extent held for reinvestment in connection with an asset sale or casualty event.  The Asset-Linked Facility will consist of two tranches of (i) MXP$ 4.15074 billion and (ii) MXP$ 1.61593 million minus the amount of any cash proceeds paid by CCM to the Tranche A2 (as defined in the Term Sheet) creditors on the Closing Date[8] from Additional Tranche A2 Collateral Sales (as defined in the Term Sheet) made before the Closing Date, respectively.  The two tranches of the Asset-Linked Facility are secured by separate pools of collateral, and proceeds from the sale of such collateral will be used to pay down the balance of the respective tranche, and if the proceeds exceed the remaining balance of such tranche the excess must be used to pay the other tranche (60% of any excess remaining after payment of the other tranche of the Asset-Linked Facility will be used to prepay the New Term Loan and the New Bonds, and the remaining 40% of such excess may be used by CCM for certain enumerated purposes set forth in the Term Sheet).  The New Bonds will consist of a series of Mexican bonds and U.S. Dollar bonds in the amount of MXP$ 1.95143 billion and US$223.9 million, respectively.  The New Bonds will be secured by the same collateral package as the New Term Loan.

18.     Prior to the filing of the Concurso Proceeding, in order to facilitate the restructuring described above, CCM entered into standstill agreements with creditors holding an aggregate of approximately 85% of the Eligible Debt (each a "Standstill Agreement" and,

---

[8]     The "Closing Date" is the date that is three (3) days following the date on which there is a final and non-appealable judgment issued by the Mexican court with respect to the Concurso Plan.

collectively, the "Standstill Agreements").  As a material inducement for the Derivative

Counterparties to enter into such Standstill Agreements, CCM and each Derivative Counterparty

also entered into agreements which acknowledge such Derivative Counterparty's claim and settle

such claim for the consideration described above and more fully in the Term Sheet (each a

"Settlement and Debt Acknowledgement Agreement").[9]  The Standstill Agreements provide that

under certain terms and conditions set forth therein, holders of Eligible Debt and CCM will agree

to support and facilitate the restructuring on the terms and conditions set forth in the Term Sheet

and the Concurso Plan.  The Standstill Agreements further provide that pending the

consummation of the restructuring embodied in the Term Sheet and the Concurso Plan, each

Creditor (as defined in each Standstill Agreement) that enters into a Standstill Agreement will

forbear from exercising its rights and remedies in respect of certain debt and certain pending

claims.

      19.    Concurrently with entry into the Standstill Agreements, CCM and its subsidiaries

entered into agreements with those creditors that executed Standstill Agreements, which obligate

CCM and its subsidiaries, on the one hand, and those creditors executing Standstill Agreements,

on the other hand, to use their reasonable best efforts to consummate a restructuring of CCM

and/or its subsidiaries on an out-of-court basis on the same commercial and other terms as set

forth in the Term Sheet and the Concurso Plan in the event that the Concurso Proceeding is

unsuccessful (each such agreement, a "Subsidiary Agreement" and, collectively, the "Subsidiary

Agreements").[10]

---

[9]     The form of Derivative Counterparty Standstill Agreement, with the form of Settlement and Debt Acknowledgement Agreement attached as an annex, executed by the Derivative Counterparties and CCM is attached as **Exhibit 2** to the Verified Petition.

[10]    A copy of a Subsidiary Agreement is attached as **Exhibit 3** to the Verified Petition.

20.     The Standstill Agreements each provide that upon any termination pursuant to its terms that is not caused by a breach of such Standstill Agreement by CCM (or its principal operating subsidiary, Tiendas Comercial Mexicana, S.A. de C.V. ("TCM")) (any termination of a Standstill Agreement, a "Standstill Termination Event"), CCM and such Creditor will have the obligations set forth in the relevant Subsidiary Agreement.  CCM and the DCP Plaintiffs have agreed that upon the occurrence of a termination event with respect to any Standstill Agreement, any stays or injunctive relief in effect in this Chapter 15 case will automatically be lifted without the need for further order or action of the Court to allow the relevant DCP Plaintiff to: (i) send a notice terminating its Standstill Agreement with CCM, to the extent such a notice is required under the relevant Standstill Agreement, and (ii) exercise all of its rights and remedies (including, without limitation, continuance of the Derivatives Litigation) against CCM and its assets, free of any stay or injunction ordered by this Court.

21.     As discussed above, in order to effectuate the global settlement contemplated in the Concurso Plan, on July 14, 2010, CCM filed the Concurso Petition with the Federal District Court.  A true and correct copy of the Concurso Petition is attached as **"Exhibit C"** hereto.[11]

22.     As set forth more fully in the del Castillo Declaration, following filing of the Concurso Proceeding, an examination will be held and the Federal District Court will issue a "business reorganization judgment" determining whether the Concurso Petition will be granted. If the Concurso Petition is granted, a stay similar to the Bankruptcy Code's automatic stay will be put in place enjoining creditors from taking any actions to enforce judgments or seize assets, and CCM will begin the process of reorganization.

23.     The Concurso Plan, which reflects the terms set forth in the Term Sheet and has been subscribed to by parties holding over 85% of CCM's outstanding indebtedness, was

---

[11]     An English translation of the Concurso Petition is attached as **"Exhibit D"** hereto.

submitted along with the Concurso Petition. In the absence of the requested relief, there is a possibility that certain creditors (including Noteholders who have not signed lock-up agreements) or others may commence actions against CCM in the United States in an effort to derail CCM's efforts to restructure through the Concurso Plan and circumvent the Concurso Process. CCM is already faced with the Derivatives Litigation, the effect of which has been to delay commencement of the Concurso Proceeding by dividing CCM's focus and attention and significantly increasing the costs of restructuring. Additional actions commenced in the United States would exacerbate these effects and impose a significant burden and distraction to CCM's efforts to consummate the Concurso Plan.

24. In the absence of the Court granting the requested relief, CCM will suffer irreparable harm. Actions taken by third parties to delay or derail implementation of the Concurso Plan would likely unravel CCM's entire restructuring, as such actions would lead to a termination of the Standstill Agreements, the continuation of the Derivatives Litigation and the exercise of additional remedies by creditors. Abandoning the current restructuring plan would leave CCM with significantly increased liabilities and no clear path to restructure those liabilities. CCM would be left with nothing but the prospect of reengaging in another round of expensive and time consuming negotiations in order to reach a new restructuring agreement, if such a new agreement is even possible, which would almost certainly be on significantly worse terms than those in the Term Sheet. Because of those concerns, I am also seeking entry of a temporary restraining order and preliminary injunction to enjoin creditors of CCM from initiating or continuing any proceedings or taking any actions in the United States with respect to CCM and/or its assets pending this Court's recognition of the Concurso Proceeding as a foreign main proceeding.

25.     I fully anticipate that CCM will be able to successfully consummate the Concurso Plan and complete its restructuring.

26.     I believe that the entry of a temporary restraining order would pose little, if any, harm upon those parties who would oppose a temporary restraining order or preliminary injunction because the scope of any such injunction would be limited to the territorial jurisdiction of the United States and such parties would not derogate any of the rights or remedies available to them in the Concurso Proceeding.  There is no value lost to creditors through the continuation of the Concurso Proceeding; to the contrary, CCM will continue as a going concern through and after completion of the Concurso Proceeding, maximizing the value of its estate for the benefit of all creditors.  As such, I believe that the balance of the harms weighs in favor of injunctive relief.

## STATEMENT PURSUANT TO
## SECTION 1515(C) OF THE BANKRUPTCY CODE

27.     I am informed that section 1515(c) of the Bankruptcy Code provides that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."

28.     In compliance with section 1515(c) of the Bankruptcy Code, I hereby declare that, to my knowledge, the only foreign proceeding (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to CCM is the Concurso Proceeding.

## LIST PURSUANT TO BANKRUPTCY RULE 1007(A)(4)

29.     I am informed that Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that a foreign representative filing a petition for recognition under chapter 15 of the Bankruptcy Code shall file with the petition:

> (A) a corporate ownership statement containing the information
> described in [Bankruptcy] Rule 7007.1; and (B) unless the court
> orders otherwise, a list containing the names and addresses of all
> persons or bodies authorized to administer foreign proceedings of

> the debtor, all parties to litigation pending in the United States in
> which the debtor is a party at the time of the filing of the petition
> and all entities against whom provisional relief is being sought
> under § 1519 of the [Bankruptcy] Code.

30.     In accordance with Bankruptcy Rule 1007(a)(4), I hereby provide the following information:

**(A)**    **Administrators in the Concurso Proceeding**

As noted above, the Concurso Proceeding was commenced through the filing of the Concurso Petition in the Federal District Court earlier today.  As such, no administrator has as of yet been appointed.  This list will be supplemented as soon as practicable, but no later than (5) business days following the appointment of any administrator in the Concurso Proceeding.

**(B)**    **Parties to Litigation in the United States in Which CCM is a Party**

As noted above, CCM is currently party to litigation in the United States with the following parties:

- J.P. Morgan Chase Bank, N.A.

- J. Aron & Company

- Merrill Lynch Capital Markets AG

- Merrill Lynch Capital Services Inc.

- Barclays Bank PLC

**(C)**    **Parties Against Whom Provisional Relief is Sought Under Section 1519**

Concurrently herewith, CCM has commenced an adversary proceeding seeking a temporary restraining order and preliminary injunction against Does 1 through 1000, who, upon information and belief, are Noteholders or other creditors of CCM, and all other persons (including individuals, partnerships and corporations, and all those acting for or on their behalf), and all governmental units (including the United States of America and any State,

Commonwealth, District, Territory, municipality, department, agency or instrumentality of the United States, a State, Commonwealth, District, Territory, municipality, a foreign state or other foreign or domestic governments, and all those acting for or on their behalf).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 16, 2010
     Mexico, D.F.

/s/ Fernando del Castillo Elorza
Fernando del Castillo Elorza

7495764